IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

DENISE L. FERRO                                                                                      PLAINTIFF

v.                              CASE NO.        10-2190

MICHAEL J. ASTRUE, Commissioner
of Social Security Administration                                                          DEFENDANT

### MEMORANDUM OPINION

Plaintiff brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (Commissioner) denying his claim for a period of disability and disability insurance benefits (DIB) and supplemental security income ("SSI") under Title II of the Social Security Act (Act), 42 U.S.C. § 423(d)(1)(A). In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision.  *See* 42 U.S.C. § 405(g).

**I.      Procedural Background:**

The plaintiff filed her applications for DIB and SSI on June 12, 2007 (T. 112), alleging an onset date of May 30, 2007 (T. 140), due to plaintiff's .  Plaintiff's applications were denied initially and on reconsideration.  Plaintiff then requested an administrative hearing, which was held on Kienbocks disease and proximal row carpendectomy (Id.).  Plaintiff was present and represented by counsel.

At the time of the administrative hearing, plaintiff was 44 years of age and possessed a 11th grade education.  The Plaintiff  had past relevant work ("PRW") experience as a manicurist

(T. 132).

On April 22, 2009, the Administrative Law Judge ("ALJ") concluded that, although severe, plaintiff's Keinbock's disease did not meet or equal any Appendix 1 listing.  T. 64.  The ALJ found that plaintiff maintained the residual functional capacity ("RFC") to perform light work.  T. 65.  With the assistance of a vocational expert, the ALJ then determined Plaintiff could not return to her past work but could perform the duties of Surveillance System Monitor and Crossing Guard.  T. 68.

## II.     Applicable Law:

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole.  *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007).  Substantial evidence is less than a preponderance, but enough that a reasonable mind would find it adequate to support the Commissioner's decision.  *Id*.  "Our review extends beyond examining the record to find substantial evidence in support of the ALJ's decision; we also consider evidence in the record that fairly detracts from that decision."  *Id.*  As long as there is substantial evidence in the record to support the Commissioner's decision, the court may not reverse the decision simply because substantial evidence exists in the record to support a contrary outcome, or because the court would have decided the case differently.  *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001).  If the court finds it possible "to draw two inconsistent positions from the evidence, and one of those positions represents the Secretary's findings, the court must affirm the decision of the Secretary." *Cox*, 495 F.3d at 617 (internal quotation and alteration omitted).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one

year and that prevents him from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see* 42 U.S.C. § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months. *Titus v. Sullivan*, 4 F.3d 590, 594 (8th Cir. 1993).

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his age, education, and experience. *See* 20 C.F.R. § § 404.1520(a)- (f)(2003). Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. § § 404.1520, 416.920 (2003).

**III.     Discussion**:

    **A.  RFC**

The ALJ determined that the Plaintiff had the residual functional capacity to perform light work as defined in 20 C.F.R. 404.1567(b) except the claimant can lift and carry 20 pounds occasionally and 10 pounds frequently, sit for about 6 hours during an 8 hour workday, and stand

and walk for about 6 hours in an 8 hour workday. The claimant can frequently balance, stoop, kneel, crouch, and crawl; can occasionally climb, and can occasionally handle and finger with her dominant right hand and use right (dominant) hand controls." T. 65.

RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1). It is defined as the individual's maximum remaining ability to do sustained work activity in an ordinary work setting "on a regular and continuing basis." 20 C.F.R. §§ 404.1545 and 416.945; Social Security Ruling (SSR) 96-8p (1996). It is assessed using all relevant evidence in the record. *Id*. This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of her limitations. *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005); *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." *Lauer v. Apfel,* 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace." *Lewis v. Barnhart,* 353 F.3d 642, 646 (8th Cir. 2003).

Nevertheless, in evaluating a claimant's RFC, an ALJ is not limited to considering medical evidence exclusively. *Cox v. Astrue*, 495 F. 3d 614 at 619 citing Lauer v. Apfel, 245 F.3d 700 at 704; *Dykes v. Apfel*, 223 F.3d 865, 866 (8th Cir.2000) (per curiam) ("To the extent [claimant] is arguing that residual functional capacity may be proved only by medical evidence, we disagree."). Even though the RFC assessment draws from medical sources for support, it is ultimately an administrative determination reserved to the Commissioner.*620 20 C.F.R. §§

416.927(e)(2), 416.946 (2006).

### 1. Subjective Complaints:

There is no Function or Pain Report in the record (T. 220) but the Plaintiff basically testified that she could not do anything as a result of her injury to her right hand. (T. 15, 36, 38-39).

The ALJ stated that "After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged pain, stiffness, numbness, weak grip, and lack of flexibility in her dominant right hand. However, the claimant's statements concerning the intensity, persistence and limiting affects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." T. 65. "The claimant's statements and testimony were heard and considered consistent with SSR 96-7p and are concluded to be inconsistent with the evidence of record and not entirely credible." T. 66.

"If an ALJ explicitly discredits the claimant's testimony and gives good reason for doing so, we will normally defer to the ALJ's credibility determination." *Gregg v. Barnhart*, 354 F.3d at 714 (Iowa, 2003); *Human v. Barnhart*, 2006 WL 2422182, 3 (D.Kan.) (D.Kan.,2006)

The ALJ must consider several factors when evaluating a claimant's subjective complaints of pain, including claimant's prior work record, observations by third parties, and observations of treating and examining physicians relating to 1) the claimant's daily activities; 2) the duration, frequency, and intensity of pain; 3) precipitating and aggravating factors; 4) dosage, effectiveness and side effects of medication; and 5) functional restrictions. Casey, 503 F.3d at 695 (8th Cir.2007) (citing Polaski v. Heckler, 729 F.2d 1320, 1322 (8th Cir.1984). The ALJ may

discount subjective complaints when they are inconsistent with the evidence as a whole. Id. (citing Polaski, 739 F.2d at 1322). "The ALJ is not required to discuss each Polaski factor as long as the analytical framework is recognized and considered." *Tucker v. Barnhart*, 363 F.3d 781, 783 (8th Cir.2004).

It appears the Plaintiff fell and broke her right wrist in November 2005. T. 207. The wrist did not heal properly and she developed Keinbock disease [1] with avascular necrosis. T. 185, 202. On July 24, 2006 a open proximal row carpectomy [2] was performed by Dr. Weiss T. 186-187 which "went very nicely" (T. 176).   On August 21, 2006 pain levels were substantially decreased (T. 183) and Therapeutic Exercises were prescribed (T. 184).  In November 2006 Dr. Weiss did prescribe Vicodin #30 for pain but informed her that he would not prescribe any further pain medication. (T. 171).

In March 2007 the Plaintiff stated to Dr. Ross that she had developed "severe osteoporosis" (T. 190). A bone density test was done March 26, 2007 which tested above the osteopenia threshold level. (T. 192).  The Plaintiff was seen by Dr. Bindra, her treating physician, on June 4, 2007 and his physical examination noted that her range of motion "shows normal flexion of 30 degrees, dorsiflexion of 50 degrees, radial elevation of 20 degrees and ulnar deviation of 35 degrees".  He also noted that her fingers were "neurovascularly intact" (T. 207). He recommended an MRI arthrogram (T. 208) which was performed on June 22, 2007.  That test showed no apparent tendinopathy or tendinosis, no bone edema and no soft tissue fluid

---

[1] Kienbock's disease involves the progressive collapse of one of the small bones in the wrist. Kienbock's disease occurs when the blood supply to this bone is compromised.  See www.mayoclinic.com.

[2] Proximal row carpectomy. If the lunate is severely collapsed or broken into pieces, it can be removed. In this procedure, the two bones on either side of the lunate are also removed. This procedure, called a proximal row carpectomy, will relieve pain while maintaining partial wrist motion.

collections (T. 193). Dr. Bindra saw the Plaintiff again on July 17, 2007 and noted that the MRI showed the Plaintiff had good cartilage on the proximal pole of the capitate and, overall, her carpal ailment appears to be satisfactory.  The physical exam showed no sign of tendinitis with a wrist range of motion of 45 degrees dorsal flexion but no palmar flexion.

The standard of evaluation is not whether plaintiff experiences pain, but if the pain alleged is intense enough to cause functional limitations. *Gowell v. Apfel*, 242 F.3d 793, 796 (8th Cir. 2001) (holding that the real issue is not whether the plaintiff is experiencing pain, but how severe and whether it prevents him from performing any kind of work). The court finds that the Plaintiff's allegations that she could not function at all was not credible and the ALJ correctly discounted her testimony.

**2.  RFC Assessment**

The RFC is determined at step four, where the burden of proof rests with the claimant. See 20 C.F.R. §§ 404.1520(a),(e),(f); 404.1545–46; 404.1560–61; *Bowen*, 482 U.S. at 146 n. 5, 107 S.Ct. 2287; *Anderson v. Shalala*, 51 F.3d 777, 779 (8th Cir.1995).

A Physical RFC assessment was performed by Dr. Jim Takach on July 25, 2007.  Dr. Takach found that the Plaintiff could lift 20 pounds occasionally, 10 pounds frequently, stand and/or walk and sit for 6 hours in an 8 hour work day.  He also determined that she was limited in her upper extremities. (T. 223).  Dr. Takach also found Postural Limitations in that the Plaintiff could only occasionally climb, but had no limitations on balancing, stooping, kneeling, crouching, or crawling. (T. 224).  Dr. Takach also found Manipulative Limitations in that the Plaintiff was limited in her handling and fingering abilities. (T. 225).  These findings were reviewed and affirmed by Dr. David Hicks on October 16, 2007. (T. 240).

"The opinion of a consulting physician who examines a claimant once ... does not generally constitute substantial evidence." *Kelley v. Callahan*, 133 F.3d 583, 589 (8th Cir.1998). Nonetheless, the ALJ's decision to credit a one-time consultant may be upheld where [the one-time] medical assessments are supported by the medical evidence. *Cantrell v. Apfel*, 231 F.3d 1104, 1107 (8th Cir.2000); *Anderson v. Barnhart* 344 F.3d 809, 812 -813 (C.A.8 (Iowa),2003)

The Plaintiff contends that the ALJ erred in his RFC assessment because he found that the Plaintiff could occasionally handle and finger with her dominant right hand and use right (dominant) hand controls. (T. 65) (ECF No. 14, p. 16). The Plaintiff argues that her medical records on August 23, 2006 showed wrist flexion was 0%, wrist extension was 30% versus 80% on the left; ulnar deviation was 0-15% on the right versus 0-40% on the left; and radial deviation was 0-15% versus 0-45% on the left. T. 184. The court notes however that this was immediately following her surgery in August 2006 and Dr. Weiss also noted that the Plaintiff had "good rehad potential with no apparent barriers noted" (T. 184) and that she was pain free (T. 183). In June 2007, when the Plaintiff saw Dr. Bindra he noted that her range of motion shows normal flexion of 30 degrees, dorsiflexion of 50 degrees, radial elevation of 20 degrees and ulnar deviation of 35 degrees. He also noted that her fingers were neurovascularly intact. (T. 207). He also noted that there was no evidence of radiocapitate arthritis. (T. 208). Dr. Bindra did note that the Plaintiff had no palmar flexion. (T. 209).

The court finds no error in the ALJ' determination of the Plaintiff's RFC Assessment.

**B. VE Testimony**

At step five in the process, the ALJ must determine if the claimant can make an

adjustment to other work. See 20 C.F.R. § 404.1520(a)(4)(v). The ALJ sought the assistance of a VE to determine whether the Plaintiff was capable of other work. The Commissioner may produce evidence of suitable jobs by eliciting testimony by a vocational expert concerning availability of jobs which a person with the claimant's particular residual functional capacity can perform. *Baker v. Apfel* 159 F.3d 1140, 1144 (C.A.8 (Ark.),1998). "Testimony from a vocational expert is substantial evidence only when the testimony is based on a correctly phrased hypothetical question that captures the concrete consequences of a claimant's deficiencies." *Cox v. Astrue*, 495 F.3d 614, 620 (8th Cir.2007). The ALJ asked the VE the following hypothetical question:

> Please let me rephrase the entire hypo. Please assume a younger individual with a limited education who can lift and carry 20 pounds occasionally and 10 pounds frequently. The individual can sit for about six hours in an eight hour workday and can stand and walk for about six hours during an eight-hour workday. The individual can occasionally use right hand controls. . . . Right hand dominant and . . .occasional handling and fingering. (Tr. 47-48).

A hypothetical question to a vocational expert is properly formulated if it sets forth impairments supported by substantial evidence in the record and accepted as true by the ALJ. *Guilliams v. Barnhart*, 393 F.3d 798, 804 (8th Cir. 2005). The court finds that hypothetical question to be properly phrased.

The VE testified first that there the Plaintiff could not do her past work and then he said "Well, I don't think there's going to be anything that she can only occasionally used in the light. If I could find something in the sedentary". (T. 48). The ALJ then suggested the DOT classification of crossing guard (DOT 371.567-010). The ALJ evaluated that light job description and testified that "Okay. Well, then could be, could be that, yes, sir. Sorry. And in

the United States there would be approximately 20,000 and in Arkansas there would be about 70". (Id.). The VE then testified that in the sedentary classification there would be the job of surveillance system monitor (DOT 379.367-010) and that there were 27,000 of those jobs in the United States and 600 in Arkansas. (T. 49).

To decide whether work exists in significant numbers, this Circuit has adopted the standards set forth in *Hall v. Bowen*, 837 F.2d 272, 275 (6th Cir.1988). *See Jenkins v. Bowen*, 861 F.2d 1083, 1087 (8th Cir.1988) (adopting Hall ). After discussing certain factors that a judge might consider in making this determination, such as the reliability of the claimant's and the vocational expert's testimony, the Hall court stated that "[t]he decision should ultimately be left to the trial judge's common sense in weighing the statutory language as applied to a particular claimant's factual situation." *Jenkins*, 861 F.2d at 1087 (quoting Hall, 837 F.2d at 275).

The Eighth Circuit has held that the existence of 122 jobs in Arkansas was significant. *See Hall v. Chater*, 109 F. 3d 1255 at 1259 (8th Cir. 1997). While the number of jobs available as a crossing guard would be problematic the number of jobs available as a surveillance system monitor would certainly meet the test.

**IV.    Conclusion:**

Accordingly, having carefully reviewed the record, the undersigned finds substantial evidence supporting the ALJ's decision, and thus the decision should be affirmed. The undersigned further finds that the plaintiff's Complaint should be dismissed with prejudice.

Dated  this August 3, 2012.

/s/ J. Marschewski
HONORABLE JAMES R. MARSCHEWSKI
CHIEF UNITED STATES MAGISTRATE JUDGE